FAIRCHILD, PROSECUTING ATTORNEY, ETC. ET AL.
V. SCHANKE, DOING BUSINESS AS NOVEL
PRINTING COMPANY, ET AL.

[No. 29,050. Filed June 29, 1953. Rehearing denied
August 4, 1953.]

482

*Alan W. Boyd, Alan C. Boyd, James J. Stewart, Frank H. Fairchild, Palmer K. Ward, R. Stanley Lawton* and *Barnes, Hickam, Pantzer & Boyd,* (of Counsel) all of Indianapolis, for appellants.

*Edward H. Knight* and *Harry M. Stitle, Jr.,* of Indianapolis, for appellees.

PER CURIAM.—This action was brought by appellees to enjoin appellants, as law enforcing officers, from enforcing any of the provisions of ch. 147 of the Acts of 1953, and as grounds therefor they allege that said act is unconstitutional and void.

Appellees, plaintiffs herein, are engaged in the business of printing and manufacturing and own valuable machinery, appliances, equipment and other personal property consisting generally of printing presses, paper cutters, folding and printing machines, tools, office furniture, paper and cardboard stocks and other supplies which are subject to being destroyed if the act in

question is valid and applicable to the business of appellees. It is alleged in the complaint that plaintiffs have no adequate remedy at law and unless appellants are enjoined from enforcing any and all of the provisions of the act, it will result in great and irreparable losses to the plaintiffs (appellees) and others similarly situated.

Upon hearing on appellees' application for a temporary injunction, the trial court found the act unconstitutional in its entirety and entered an interlocutory order enjoining appellants from enforcing any of the provisions thereof as they might affect appellees, until further orders or final judgment of the court.

The errors here assigned are:

1. The trial court erred in entering the interlocutory order granting the temporary injunction.
2. The trial court erred in overruling appellants' motion to modify the interlocutory order granting the temporary injunction.

The constitutionality of said act is attacked upon several grounds.

We shall first consider the principal question presented, which is: Does the exclusion of bona fide religious, patriotic, charitable and fraternal clubs from the provisions of the act make it invalid as being in contravention of §23 of Art. 1 of the Indiana Constitution?

We recognize the well established principal that it is the duty of this court to sustain the constitutionality of an act of the legislature if it can be done by a reasonable construction. Any doubt concerning the constitutionality of an act must be resolved in favor of its validity. *Department of Financial Institutions* v. *Holt* (1952), 231 Ind. 293, 108 N. E. 2d 629, 633; *Zoercher* v. *Agler* (1930), 202 Ind. 214, 230, 172

N. E. 186, 172 N. E. 907, 70 A. L. R. 1232; *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 197, 191 N. E. 158, 96 A. L. R. 271.

Chapter 147, Acts of 1953, is: "An Act concerning the crime of gambling, and providing penalties therefor."

The policy of the legislature is declared in §1 as follows:

"SECTION 1. It is hereby declared to be the policy of the general assembly, recognizing the close relationship between professional gambling and other organized crime, to restrain *all persons* from seeking profit from gambling activities in this state; to restrain all persons from patronizing such activities when conducted for the profit of any person; to safeguard the public against the evils induced by common gamblers and common gambling houses; and at the same time to preserve the freedom of the press and to avoid restricting participation by individuals in sports and social pastimes which are not for profit, do not affect the public, and do not breach the peace. All the provisions of this act shall be liberally construed to achieve these ends, and administered and enforced with a view to carrying out the above declaration of policy." (Our italics).

Section 2 provides:

"(1) 'Gain' means the direct realization of winning; 'profit' means any other realized or unrealized benefit, direct or indirect, including without limitation benefits from proprietorship, management, or unequal advantage in a series of transactions.

"(2) 'Gambling' means risking any money, credit, deposit or other thing of value for gain contingent in whole or in part upon lot, chance or the operation of a gambling device, but does not include: bona fide contests of skill, speed, strength or endurance in which awards are made only to entrants or the owners of entries; bona fide busi-

ness transactions which are valid under the law of contracts; and other acts or transactions now or hereafter expressly authorized by law.

"(3) 'Professional gambling' means accepting or offering to accept, for profit, money, credits, deposits or other things of value risked in gambling, or any claim thereon or interest therein. Without limiting the generality of this definition, the following shall be included: pool-selling and bookmaking; maintaining slot machines, one-ball machines or variants thereof, pinball machines, roulette wheels, dice tables, or money or merchandise pushcards, punchboards, jars or spindles, in any place accessible to the public; and conducting lotteries, gift enterprises, or policy or numbers games, or selling chances therein; and the following shall be presumed to be included: conducting any banking or percentage game played with cards, dice or counters, or accepting any fixed share of the stakes therein.

. . . .

"(7) 'Gambling premise' means any building, room, enclosure, vehicle, vessel or other place whether open or enclosed, used or intended to be used for professional gambling. In the application of this definition, any place where a gambling device is found shall be presumed to be intended to be used for professional gambling.

"(8) 'Whoever' and 'person' include natural persons, partnerships and associations of persons, and corporations; and any corporate officer, director or stockholder who authorizes, participates in, or knowingly accepts benefits from any violation of this act committed by his corporation. 'Whoever' and 'person' as used herein shall not be construed to mean bona fide religious, patriotic, charitable, or fraternal clubs, which are expressly excluded from the provisions of this act."

Section 3 provides:

"(1) Whoever engages in gambling, or solicits or induces another to engage in gambling shall be fined not more than five hundred dollars, or imprisoned not more than six months, or both."

Section 4 provides:

"(1) All gambling devices are common nuisances and are subject to seizure, immediately upon detection, by any peace officer, who shall hold the same subject to confiscation and destruction by order of a court having jurisdiction.

. . . .

"(3) All furnishings, fixtures, equipment and stock, including without limitation furnishings and fixtures adaptable to non-gambling uses and equipment and stock for printing, recording, computing, transporting, safe-keeping or (except as otherwise provided in subsection (3) of section 5) communication, used in connection with professional gambling or maintaining a gambling premise, and all money or other things of value at stake or displayed in or in connection with professional gambling or any gambling device, shall be subject to seizure, immediately upon detection, by any peace officer, and shall, unless good cause is shown to the contrary by the owner, be forfeited to the state by order of a court having jurisdiction, for sale by public auction or as otherwise provided by law. . . ."[1]

Appellees contend that the exclusion of bona fide religious, patriotic, charitable, and fraternal clubs from the provisions of the act is an arbitrary and invalid classification, and that because of this the entire act is invalid.

Article 1, §23, Indiana Constitution provides:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The rule pertaining to classification under the provisions of said §23 of Art. 1 has been ably stated and well settled by this court. Our task here is not to de-

---

1. Only that part of the above sections which we consider pertinent to the question under consideration is set out above.

termine rules, but rather to apply those which are firmly established in Indiana to the provisions of the act before us.

The rule as to classification was clearly and ably stated by this court in *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674, 80 N. E. 529, 14 L. R. A. (N. S.) 418, as follows:

> "The legislature may make a classification for legislative purposes, but it must have some reasonable basis upon which to stand. It is evident that differences which would serve for a classification for some purposes would furnish no reason for a classification for legislative purposes. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial. Not only must the classification treat all brought under its influence alike, under the same conditions, but it must embrace all within the class to which it is naturally related. Neither mere isolation nor arbitrary selection is proper classification. [Citing numerous authorities]."

This rule was recently reaffirmed in *Evansville & Ohio V. Ry. Co.* v. *Southern Ind. R. E. Corp.* (1953), 231 Ind. 648, 109 N. E. 2d 901, 904:

> "The legislature has the power of classification for legislative purposes. However, the reason for the classification must inhere in the subject-matter. The classification must rest upon some reason which is natural and substantial. It must not be arbitrary or artificial and it must embrace all within the class to which it is naturally related. Jordan v. City of Logansport, 1912, 178 Ind. 629, 641, 99 N. E. 1060, 1061, and authorities there cited. Not only must the classification treat alike all who are brought within its influence, but it must embrace all who naturally belong to the class.

Bedford Quarries Co. v. Bough, 1907, 168 Ind. 671, 674, 80 N. E. 529, 14 L. R. A., N. S. 418, and authorities cited; Fountain Park Co. v. Hensler, 1927, 199 Ind. 95, 102, 155 N. E. 465, 50 A. L. R. 1518, *supra.*"

See also: *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 182, 191 N. E. 158, 96 A. L. R. 271, *supra; Heckler* v. *Conter* (1934), 206 Ind. 376, 381, 187 N. E. 878; *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 101-103, 155 N. E. 465; 50 A. L. R. 1518. *Armstrong* v. *State* (1908), 170 Ind. 188, 84 N. E. 3, 15 L. R. A. (N. S.) 646; *State* v. *Griffin* (1948), 226 Ind. 279, 287, 79 N. E. 2d 537; *Perry Tp.* v. *Indianapolis Power & Light Co.* (1946), 224 Ind. 59, 69, 64 N. E. 2d 296; *Davis Construction Co.* v. *Board, etc.* (1922), 192 Ind. 144, 150, 132 N. E. 629, 21 A. L. R. 557; *State* v. *Wiggam* (1918), 187 Ind. 159, 161, 118 N. E. 684; *Cincinnati, etc. R. Co.* v. *McCullom* (1915), 183 Ind. 556, 561, 109 N. E. 206, Ann. Cas., 1917E, 1165, 245 U. S. 632, 38 S. Ct. 64, 62 L. ed. 521; *Railroad Com. etc.* v. *Grand Trunk, etc. R. Co.* (1913), 179 Ind. 255, 262, 100 N. E. 852.

"The question of classification is primarily for the legislature and does not become a judicial question unless it clearly appears that the legislative classification is not based on substantial distinctions with reference to the subject-matter, or is manifestly unjust or unreasonable."

*Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 101, 155 N. E. 465, 50 A. R. L. 1518, *supra; Evansville & Ohio V. Ry. Co.* v. *Southern Ind. R. E. Corp.* (1953), 231 Ind. 648, 109 N. E. 2d 901, 904, *supra.*

Is the classification here under consideration based upon a substantial distinction with reference to the subject-matter?

The purpose of the act (ch. 147, Acts of 1953) is clearly stated in the title and in §1 and is "to restrain *all persons* from seeking profit from gambling activities in this state; . . . ." (Our italics).

Is there any substantial distinction between a bona fide religious, patriotic, charitable or fraternal club seeking and receiving profit from the conduct of a lottery, the operation of slot machines, or any other gambling device, and an individual, a social club, or professional gambler who operates a similar lottery enterprise, slot machines or other gambling devices?

We can see none. Nor has any valid distinction been pointed out to us by appellants.

Appellants attempt to justify the exclusion on the ground that the consequences to society are not the same if the profit from activities which constitute gambling goes to buy new athletic equipment for a Sunday school, as if such profits went to organized gambling. They further suggest that the threat or danger to society is different from that posed by professional gambling. This argument was ably answered by the Supreme Court of New Mexico in *Harriman Institute, etc.* v. *Carrie Tingley C. C. Hospital* (1938), 43 N. M. 1, 84 P. 2d 1088, when, at page 1091, it said:

> ". . . the gambling spirit feeds itself with as much relish upon a charity lottery as upon any other kind. If the average person be consumed with a desire to take a chance and get something for nothing, it matters not to him whether the promoter makes a profit or that the profit goes to charity. Indeed, if it does go to charity, his participation wears a cloak of piety otherwise denied it. He thus may be persuaded to purchase tickets oftener and in larger volume because operated in the name of charity or religion. The point we seek

to make is that widespread participation in a charity lottery is just as baneful in its effect upon the public as widespread participation in any other kind of lottery."

The reasoning employed in the above case applies with equal force in the case at bar.

Appellants further assert that the purpose of said act is to stamp out professional gambling, hence the exclusion of certain clubs is valid. We do not so construe the act. It clearly appears from the provision of the act that it was intended to apply to all persons except those clubs which are excluded by subsection 8 of §2. This position is further sustained by the fact, as set out in appellants' brief, that a provision in the Model Act[2] which exempts natural persons from punishment under the act for any game, wager or transaction which is incidental to a "bona fide social relationship" was eliminated from the Indiana act.

We are aware of no inherent differences in relation to gambling which require or necessitate different legislation with respect to religious, patriotic, charitable, or fraternal clubs than for other clubs with like situations as those in the excluded class.

The classification here is clearly not based upon a substantial distinction with reference to the subject-matter of the act. *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 101, 155 N. E. 465, 50 A. L. R. 1518, *supra; Evansville & Ohio V. Ry. Co.* v. *Southern Ind. R. E. Corp.* (1953), 231 Ind. 648, 109 N. E. 2d 901, 904, *supra.*

Does the classification here rest upon a reasonable basis?

The excluded clubs are exempt from the penal pro-

2. Model anti-gambling act prepared by the American Bar Association Commission on organized crime.

visions of §3(1) and from the property seizure provisions of §4.

Is there any valid reason why an individual or a club of a kind, not included in the exception, which solicits or induces another to engage in gambling, should be subject to a penalty, while a religious, patriotic, charitable, or fraternal club which engages in a similar enterprise is exempt from punishment?

We think not.

The same reasoning applies with equal force to the seizure of property under §4.

No valid reason has been given to justify the establishment of the class which is attempted to be created by the act. No natural or substantial reason has been advanced in support of the classification attempted and, when the act is considered *in toto* such classification clearly appears unreasonable, artificial and arbitrary, and not founded upon a reasonable basis.

Are we to say that when an enterprise is conducted by a religious, patriotic, charitable, or fraternal club and proceeds therefrom are devoted to a religious, patriotic, charitable, or fraternal purpose that such enterprise is not gambling, but if the same enterprise is conducted by an individual or a club not within the excluded class, it is gambling? We can see no reasonable or logical basis for such a distinction.

In determining the construction of the act here in question this court will take judicial notice[3] of the fact

---

3. See: Department of Financial Institutions v. Holt (1952), 231 Ind. 293, 108 N. E. 2d 629, 633, *supra;* Evansville & Ohio V. Ry. Co. v. Southern Ind. R. E. Corp. (1953), 231 Ind. 648, 109 N. E. 2d 901, *supra;* State v. Griffin (1948), 226 Ind. 279, 79 N. E. 2d 537, *supra.*

that there are many social clubs and service clubs in Indiana which do not come within the excluded class in the act, but which are by their nature related to those excluded and are similarly situated as to organization and general purpose. These clubs are subject to the act. They cannot, with immunity, operate gambling devices or conduct lotteries or gambling enterprises at any time or for any purpose, while the excluded clubs are exempt from the provisions of the act, thereby extending to them privileges and immunities which, upon the same terms, are not granted to other clubs and individuals similarly situated. The exclusion does not embrace all within the class to which it is related.

For the reasons above stated the classification here does not embrace all who naturally belong to the class or possess the common attributes or qualifications; and there are no natural or substantial differences germane to the subject and purposes of the act between those within the class excluded and those it leaves untouched.

The expressed purpose of the act is to prohibit "gambling" and "professional gambling" as defined in the act. The evil sought to be reached by its provisions is identical to the purpose, and we can see no reasonable basis or "fair reason for the law that would not require with equal force its extension to others whom it leaves untouched"[4] (excluded).

The act here in question is concerned with and related to the public morals, safety and welfare.[5] Can it reasonably be said that the exclusion of a certain class of clubs from the provisions of the act, thereby permitting them to conduct gambling

---

4. Bolivar Twp. Bd. of Fin. of Benton Co. v. Hawkins (1934), 207 Ind. 171, 181, 191 N. E. 158, 96 A. L. R. 271, *supra;*
5. State v. Wiggam (1918), 187 Ind. 159, 161, 118 N. E. 684, *supra;* Kirtley v. State (1949), 227 Ind. 175, 181, 84 N. E. 2d 712.

enterprises and operate gambling devices as defined in the act, is concerned with or in the interest of the public morals, safety or welfare? The question provides its own answer.

The classification attempted in §2(8) of the act clearly does not rest upon a reasonable basis and is arbitrary and unreasonable. The act does not affect all persons similarly situated. It is class legislation in the highest degree and contravenes §23 of Art. 1 of the Constitution of Indiana.

Since the exclusion provision in §2(8) is invalid, does this void the act in its entirety?

Section 10 of said act provides:

"Sec. 10. If any provision of this act or the application thereof to any person or circumstances is invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provisions or application, and to this end the provisions of this act are declared to be severable."

The effect of eliminating the exclusion provision from §2(8) would be to extend the operation of the act to bona fide religious, patriotic, charitable, and fraternal clubs. The legislature in inserting the exclusion provision by an amendment to the act in the Senate, which was concurred in by the House, affirmatively expressed its intention that the excluded clubs not be subject to the act. It seems evident from the record before us that the legislature would not have passed the act without the provision excluding certain clubs named in the exception.

The elimination of the excluding provision from the act would broaden its scope to include subject-matter which was not included therein when enacted. This is in direct opposition and contrary to the expressed legislative intent.

The severability clause (§10) cannot be interpreted to mean that if a clause or a phrase in the act invalidates the legislative intent, the court may change that intent. Only the legislature can do that. *Ettinger* v. *Studevent; Hole* v. *Dice* (1942), 219 Ind. 406, 423, 38 N. E. 2d 1000.

The rule which here applies is stated in 11 Am. Jur., Constitutional Law, §161, p. 855, as follows:

> "One important class of cases in which questions as to the severability of valid and invalid portions of an act and the determination of the legislative intent are involved consists of statutes containing invalid exceptions or provisos. The general rule is that if such a proviso operates to limit the scope of the act in such a manner that by striking out the proviso, the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid, because such extended operation would not be in accordance with the legislative intent."

See also: *Ettinger* v. *Studevent; Hole* v. *Dice* (1942), 219 Ind. 406, 38 N. E. 2d 1000, *supra; Springfield Gas & Electric Co.* v. *City of Springfield* (1920), 292 Ill. 236, 126 N. E. 739, 742, 18 A. L. R. 929, 257 U. S. 66, 42 S. Ct. 24, 66 L. ed. 131.

The exception in §2(8) of the act violates Art. 1, §23, of the Indiana Constitution and because its elimination broadens the scope of the act contrary to the legislative intent the entire act is, therefore, invalid and void.

Since, for the reasons above stated, the entire act is invalid and of no force and effect, it is not necessary to consider the other questions raised.

The interlocutory order of the trial court granting a temporary injunction is affirmed.[6]

---

6. See: Department of Financial Institutions v. Holt (1952), 231 Ind. 293, 108 N. E. 2d 629, 637-638, *supra.*

Judgment affirmed.

NOTE.—Reported in 113 N. E. 2d 159.