## State of Vermont v. Bally Beach Club Pinball Machine Et Al

[119 A2d 876]

November Term, 1955.

Present: **Jeffords, C. J., Cleary, Adams, Chase and Hulburd, JJ.**

Opinion Filed January 3, 1956.

*Raymond L. Miles* for the respondents.

*Frederick M. Reed,* Deputy Attorney General, and *Rudolph J. Daley,* State's Attorney, for the State.

**Hulburd, J.** These are two cases which were consolidated, heard together, and disposed of in like manner below, the proceedings and evidence in each differing in no significant respect. In each we have an appeal from an order of destruction made by the Orleans Municipal Court of a certain pinball machine, so-called, which had been seized without warrant by a state police officer. The order of destruction and proceedings leading up to it are purportedly based on V. S. 47, §8558.

The appellant, the owner of both machines, does not question their identity, nor that they were seized in a place of public resort, nor does he otherwise attack the validity of the destruction order except in one respect. He contends that the machines in question were not gambling machines as defined by section 8558 of the statutes and that there was no admissible evidence before the court from which it could properly so find.

Following the seizure, a hearing was regularly had to which the occupant of the place where the machine was found was duly summoned. The occupant did not appear, but the owner of the machines did through his attorney. At the

hearing testimony was taken. After the evidence was all in, the court did not make detailed findings of fact. All that it did was to make the ultimate finding of fact as specified in the statute in these words: "finding is hereby made that the above machines are gambling machines within the meaning of the Vermont Statutes and were seized in a place of public resort."

Since the municipal court in following the statute relative to seizure and confiscation of gambling machines was not dealing with a matter which entitled either party to a trial by jury, it was under no duty to make any finding of fact other than that prescribed by the statute in question. The general obligation in that regard, imposed by V. S. 47, §2121 in connection with §1465 was not applicable to a proceeding of this sort.

The question presented to us, therefore, is whether the ultimate finding of fact as made by the court below was fairly and reasonably supported by the evidence produced before it. The burden is on the appellant to produce a record from which error appears. *Ricci* v. *Bove's Executor*, 116 Vt 335, 336, 75 A2d 682.

Taking the case made against Bally Atlantic City Pinball Machine as a prototype, the record discloses that the machine in question was seized on April 19, 1955, by William A. Green, corporal in the State Police. At the confiscation hearing, the State called as a witness, Robert H. Iverson, another corporal of the State Police, who was allowed to testify over the appellant's objection of "immaterial" that on March 25, 1955, he and Trooper Richardson, also of the State Police, went to the Texaco station operated by one Richard Parker in Derby Line, Vermont, where they found the machine in question. They were not in uniform at the time. While waiting to have their car greased, they began playing the machine, and observed what it was like and how it operated. This was related to the court in the testimony of both Corporal Iverson and Trooper Richardson without contradiction on the part of any other witness. Their evidence was such that the court might reasonably find the following regarding the nature of the machine. It is an apparatus into which the

player puts a nickel and he then can shoot five yellow balls to obtain a score. If the balls happen to drop into the right holes, he can win a free game. The machine is so constructed that the more nickels one puts in before starting to play the better the odds are likely to be. The odds at which the device is operating register on a backboard attached to the machine. These odds are not selected by the player; the machine does that. Sometimes one nickel put in will give good odds; other times "it takes a lot of money" to build them up. The higher the odds one has before he starts to play, the more free games he will win, if he happens to get the right balls in the right holes. As one wins one or more free games, their number is registered on the backboard. Once free games have been won, the player does not have to insert nickels to play the machine until the free games have been exhausted. As each free game is played, it is subtracted automatically on the backboard. But the device is not so constructed that the free games can only be used up by further play. It is so designed that if the player decides not to use up his credit to the number of free games showing on the backboard, and prefers instead to receive the cash they represent, the person in charge of the machine by reaching underneath it, may push a button which cancels all free games off the board. So far as appears in the evidence, this feature of the machine is designed to be used, and has no other function except to permit the free games to be converted into cash. Thus the prize of free games is by the machine itself made readily convertible into money. The witnesses testified that some of the free games won by them they took in play and some were cancelled off by the attendant by pushing the button as stated and paying them five cents for each free game so cancelled.

■ Corporal Green of the State Police who seized this machine and instituted proceedings did not claim that he had played it or had seen it operated, but the appellant conceded that it was the same machine which Corporal Iverson and his fellow trooper had observed and operated. As we stated earlier all of Iverson's and Richardson's testimony was received against the appellant's objection that it was immater-

ial. The question before the court was not whether the machine was taken in the act of gambling, but whether or not it was a gambling machine within the statute. The testimony of Iverson and his associate was all material to the determination of the nature of the machine and clearly admissible. Since it was conceded to be the same machine complained against, it was proper for the court to take the evidence in order to learn what manner of machine it was. *Hunter* v. *Mayor and Council of Teaneck*, 128 NJL 164, 24 A2d 553.

■ ■ When, in fact, a machine is a gambling machine, its possession contrary to the statute becomes illegal whether it is operated or not. See on this point, *Hurvich* v. *State*, 230 Ala 578, 162 So 362. There is no requirement that the seizing officer see the machine in operation.

Before going further it may be well to have before us the language of the statute involved. We are concerned here with only the last two subdivisions of section 8558; the first subdivision could not apply to the problem under consideration. If the machine in question is not one described and defined in either subdivision "II" or "III", then it was wrongfully seized. These provisions read:

> "II. A coin or slot machine, pinball machine, racing machines or other device of like character, wherein there enters any element of chance, whether the same be played for money, checks, credits, merchandise or other thing representative of value; or

> "III. A machine or device of any kind or nature by the use or operation of which there is an element of chance for the winning or losing of money or other things of value."

An examination of the statute just quoted shows that there are certain elements which are necessary to make the apparatus a gambling machine. First we must have a machine or device of some kind, slot or otherwise. We need waste no time over that; clearly we have the machine in this case. Next, there must be the element of chance in its operation. The evidence before the court amply showed that both in the

matter of odds and in the matter of how the balls rolled, the element of chance played an undeniable role. Lastly, there must be the possibility of winning (or losing) money, checks, credits, merchandise, or other things of value, or representative of value. It is about this element that the contest largely centers.

The evidence before the court was that the machine was equipped to be operated in two different ways: for cash or for free games. It was supplied with a special button underneath the machine for the use of the person having it in charge in redeeming the free games in money. The fact that the button was there is not altogether consistent with the innocent character claimed for the machine by the appellant. But the appellant contends that the machine might be operated for free games only and so, in and of itself, it furnished no chance of winning anything of value. This brings us to the question: is a free game a thing of value?

Although this question has not been passed upon in this State, it is not a new one for the courts. Many jurisdictions have dealt with it under statutes of varying provisions. As a result the conclusions reached have, in turn, varied somewhat.

For example, under a statute prohibiting a machine devised for the purpose of playing any game of chance "for money or property", the court held in *State* v. *Waite*, 156 Kan 143, 131 P2d 708, 709, 148 ALR 874, that the free-game feature was not sufficient to make a machine illegal under the statute.

On the other hand, such machines have been held gambling machines when the statute in force included the expression "or other thing of value". Thus, the court in *Alexander* v. *Hunnicutt*, 196 SC 364, 13 SE2d 630, held in discussing whether a free game is a thing of value that since amusement has value, and added amusement has additional value, and since that additional amusement is obtained by chance without payment of additional compensation, therefore, there are involved in the game the three necessary elements of gambling, viz: chance, price and prize."

Free games might not be much of a prize for some, but for others they furnish an irresistible lure. It is quite con-

ceivable that a person having won a number of free games might receive an offer from a bystander for the privilege of playing out the credited number posted on the backboard of the machine. Such a potentiality furnished by the machine is clearly a thing of value, slight as it is. Where, as here, there is reason to believe that the free-game device is being used at once to implement and to conceal the full extent of a gambling scheme, the courts will be quick to find that the requisite value exists to bring the contrivance within the statute.

Other representative cases holding that free games are things of value are: *Henry* v. *Kuney*, 280 Mich 188, 273 NW 442; *Thamart* v. *Moline*, 66 Idaho 110, 156 P2d 187; *State* v. *Langford*, Tex Civ App, 144 SW2d 448; *Rankin* v. *Mills Novelty Co.*, 182 Ark 561, 32 SW2d 161; *Steely* v. *Commonwealth*, 291 Ky 554, 164 SW2d 977; *Kraus* v. *City of Cleveland*, 135 Ohio St 43, 19 NE2d 159; and see *State* v. *Mint Vending Mach. Co.*, 85 NH 22, 154 A 224.

The appellant has cited us only one case on the main question, *State* v. *Teletypewriter Machine*, 97 NH 282, 86 A2d 333, 335. Here the question was whether or not a teletypewriter used to transmit bets on race horses was a gambling machine "intended for the purpose of winning money or any other thing by chance or hazard." The court quite properly held not. It is enough to say that the element of chance played no part in the operation of the machine, the teletypewriter. The case is in no way analagous to what we have here, and it is not an authority for the appellant's position.

Our attention has been called by the appellant to No. 28 of the Acts of 1951, under which the Legislature provided for the licensing of machines "which may be operated by the player in attempting to make a score or reach a standard", and the claim is made that the machines in question come within this act. For reasons already set forth in this opinion the machines in question were more than mere devices to be operated to make a score or standard. They had all the characteristic elements constituting a gambling machine. By its terms, section 1 of No. 28 of the Acts of 1951 specifically referred to V. S. 47, §8558, and stated "no provision herein

shall be construed as legalizing such machine, apparatus or device." The licensing statute, in other words, is made expressly subject to the prohibitory gambling machine statute of V. S. 47, §8558, and it in no way makes lawful a machine coming within the provisions of the latter.

After reviewing the cases on the subject as well as analyzing the situation independently, we hold that free games are a thing of value within the statute. In view of this holding, all of the requisite elements necessary to constitute a gambling machine were present and the court's finding in that regard was without error. The appellant's claim that the machine in question is not a gambling machine *per se* is unsound. *The court's ultimate finding that both machines were gambling machines within the meaning of the Vermont Statutes is without error and its order of destruction is affirmed.*