PEACHEY ET AL. *v.* BOSWELL, MAYOR, ET AL.

[No. 29,840. Filed May 5, 1960. Rehearing denied June 23, 1960.]

606

*Royse, Travis, O'Brien & Hendrickson,* of Indianapolis, for appellants.

*Jacobs & Jacobs* and *Andrew Jacobs, Sr.,* of Indianapolis, for appellee, Robert O'Neal, Sheriff.

*Michael B. Reddington,* Corporation Counsel, of Indianapolis, for appellee, Charles Boswell, Mayor.

*Howard L. Whitecotton,* of Indianapolis, for appellee, Phillip L. Bayt, Prosecutor.

BOBBITT, J.—Appellants brought this suit to enjoin appellees from interfering with their business of leasing, maintaining and operating, in Marion County, Indiana, mechanically operated, free replay pinball machines which record the right of replay and indicate the number of free games won.

The complaint alleges, *inter alia,* as follows:

"3. The aforesaid pin ball machines are not a mechanism by the operation of which a right to

money, credits, deposits or other thing of value may be created in return for a consideration as a result of the operation of an element of chance, nor is it a mechanism, furniture, fixture or construction designed primarily for use in connection with gambling, professional or otherwise; that said machine's design and purpose is that of entertainment and amusement. Plaintiff further asserts that said pin ball machines are not gambling devices as described and defined in Chapter 265, Section 2, Paragraph 4 of the Acts of the General Assembly of 1955 but on the contrary said machines are specifically exempted from the provisions of said Act of the General Assembly under the provisions of subparagraph 3, Section 2 of said Act as aforesaid.

"4. The aforesaid pin ball machines operate by the player inserting a nickel (or in some models a dime) in the machine. This releases five balls which the player mechanically shoots one ball at a time into a field of plugs, dips, obstructions and holes, each of which registers a number or total sum of varying amounts. The course and direction of the balls may be influenced by the use of flippers in the machine, requiring the skill of the player to operate the flippers in the exact manner to produce the desired guidance of the ball. The greater the skill of the player, the greater total accumulated and the greater number of free games to which he shall be entitled. On attaining a fixed total of a definite sum from the playing of the five balls the player may receive from one to five or more free games, depending on the size of the total attained by him, and the skill of the player as aforesaid. Such free games are automatic and the machine automatically releases the trigger mechanism for the number of games won by the player, all of which must be immediately replayed. None of such machines gives any slug, credit, deposit, merchandise or anything of value whatsoever."

The complaint further alleges that the entire chapter 265 of the Acts of 1955, as amended by chapter 205 of the Acts of 1957, being §10-2330, Burns' 1959 Cum. Supp., violates certain provisions of the Constitution

of the State of Indiana and the Constitution of the United States and is, therefore, invalid and void. It is not necessary to set out here the particular provisions of the State and Federal Constitutions to which appellants have specifically referred in their complaint, since those discussed in the argument section of appellants' brief will be considered in this opinion in due course.

The trial court issued a temporary restraining order covering "mechanically operated pin ball machines, wheresoever located in Marion County, Indiana, *with or without recording devices thereon.*" (Our italics.) Subsequently, on appellants' motion for a change of venue from the county, the case was transferred to Boone Circuit Court. On July 10, 1957, defendants-appellees filed a motion to dissolve the restraining order, which was overruled by the regular judge of such court and the restraining order was continued in force as a temporary injunction. Appellees then filed a motion for change of judge. After his selection and qualification, trial was had on the question of a permanent injunction.

The trial court found, *inter alia,* as follows:

"16. That the injunction heretofore entered should be retained inasmuch as it applies to pinball machines which are exempted under the 1957 act, to-wit: those which do not contain an automatic recorder to record free games, but which mechanically award an immediate right of replay unrecorded.

"17. That the injunction should be modified and dissolved as to all other types of pinball machines which do contain such recorders of free games and that the defendants may seize the latter as contraband gambling devices without a warrant in public places and with proper warrant in private places."

Judgment was entered which, omitting formal parts, is as follows:

"WHEREFORE, IT IS ORDERED, AD-JUDGED AND DECREED that the defendants are enjoined permanently from seizing pinball machines of the plaintiffs which do not have recording devices for registering free games, and the temporary injunction is modified and dissolved to the extent of allowing defendants to seize as contraband gambling devices those pinball machines so equipped with such recording devices for free games."

The basic question here is: Did the Legislature have the power to outlaw as gambling devices, pinball machines which award anything other than an immediate and unrecorded right of replay?

*First:* Appellants assert that ch. 265 of the Acts of 1955, as amended by ch. 205 of the Acts of 1957, is unconstitutional and void as being an unlawful exercise of the police power, and rely upon *Kirtley* v. *State* (1949), 227 Ind. 175, 84 N. E. 2d 712; *State Board of Barber Examiners* v. *Cloud* (1942), 220 Ind. 552, 44 N. E. 2d 972; *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89, 80 Am. St. Rep. 195, 50 L. R. A. 64; *Railroad Com. etc.* v. *Grand Trunk, etc., R. Co.* (1913), 179 Ind. 255, 100 N. E. 852.

Appellees contend that this question was decided against appellants in *Tinder, Pros. Atty., et al.* v. *Music Op. Inc.* (1957), 237 Ind. 33, 55, 142 N. E. 2d 610.

The police power is exercised by the State to promote the health, safety, and welfare of the public. It " 'is the province of the legislature to decide when the exigency exists for the exercise of this power, but as to what are the subjects which come within it, is evidently a judicial question.' " *Blue* v. *Beach, supra* (1900), 155 Ind. 121, 130, 56 N. E. 89, 80 Am. St. Rep. 195, 50 L. R. A. 64; *Railroad Com. etc.* v. *Grand Trunk, etc., R. Co., supra* (1913), 179 Ind. 255, 259,

100 N. E. 852. *Blue* v. *Beach, supra,* involved the constitutionality of a rule of the Board of Health of Terre Haute, Indiana, adopted pursuant to statutory authority providing that "no persons shall be allowed or permitted to attend any public school within the limits of said city without first being vaccinated. . . ." This rule was upheld as an exercise of the police power in the interest of public health. This case lends no support to appellants' position here.

*Railroad Com. etc.* v. *Grand Trunk, etc., R. Co., supra,* involved the constitutionality of an Act requiring railroads operating in the State to install "block systems for the control of trains." Aside from the statement of some general rules pertaining to the exercise of the police power, this case also lends no support to appellants' position here.

*State Board of Barber Examiners* v. *Cloud, supra* (1942), 220 Ind. 552, 44 N. E. 2d 972, involved an Act attempting to fix the prices which barbers could charge and the hours when their shops might be open for business. Appellants contend that the following language appearing at page 563 of 220 Ind., and at page 977 of 44 N. E. 2d,

> "The declarations in §1, with respect to public health and sanitation, seem to us to have no substantial basis in fact and may have been inserted in an effort to lend color of constitutionality to a law that could not otherwise be sustained."

"directly applies to" the Act here in question. However, it is not shown wherein such application lies.

If appellants are suggesting that there is no substantial basis for declaring the maintaining of pinball machines, which award anything other than an immediate and unrecorded right of replay, to constitute professional gambling, as defined in the Act, we think this

question was answered to the contrary in *Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra* (1957), 237 Ind. 33, 142 N. E. 2d 610.

We have no quarrel with the statement from *Kirtley* v. *State, supra* (1949), 227 Ind. 175, 181, 84 N. E. 2d 712, as quoted on pages 91, 92, of appellants' brief, as follows:

> " 'The limit to such legislation has been well stated thus: "If the law prohibits that which is harmless in itself, or requires that to be done which does not tend to promote the health, comfort, morality, safety or welfare of society, it will be an unauthorized exercise of power, and upon proper presentation it is the duty of the courts to declare it [such a law] void." ' "

However, we cannot concur in appellants' statement that "[i]f pinball machines with recorders are harmful to the public, then, of necessity, such machines without recorders are harmful."

In *Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra* (1957), 237 Ind. 33, at page 55, 142 N. E. 2d 610, at page 621, this court said:

> "During the pendency of this case, subsection '(4)' of Section 2 of the Acts of 1955 (§10-2330, *supra*) was amended by House Bill 128, which added the italicized words to the provision of the 1955 Act, as follows: '. . . Provided, That in the application of this definition an immediate *and unrecorded* right to replay mechanically conferred on players of pinball machines and similar amusement devices shall be presumed to be without value.' (Our italics.)
>
> "It is suggested that, by reason of this amendment, [Acts 1957, ch. 205, §1, p. 425] the question presented by the case before us may be moot. However, it does not appear from the record that *the right of replay was recorded* on the machines under consideration *in the case now before us.* Obviously the purpose of the amendment was to further limit

the type of pinball machines excluded from the penal provisions of the act. It seems apparent that it would be much more improbable that *unrecorded* free games might be exchanged for money or other things of value, which exchange is the test of legality of the use of such machines within the provisions of both the 1955 and the 1957 Acts." (Our italics.)

The clear intent of the Legislature was to prohibit the use and "maintaining" of pinball machines which are equipped with recording devices that may be used to compute "payoffs."

*Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra,* recognizes the power of the Legislature to proscribe such machines or devices. The decree in that case prohibited the appellants from interfering with the leasing, maintaining, operating, distributing and possessing pinball machines of any kind. In our mandate, at pages 55, 56 of 237 Ind., page 622 of 142 N. E. 2d, we said:

"The decree herein is affirmed to the extent that it enjoins appellants from seizing or interfering with the pinball machines of the appellee. The remaining portion of the decree is reversed. And the court is ordered to amend its decree to provide that the injunction be perpetual so long as such machines are and continue to be of the type *specifically exempted* by the statute and the free games conferred by such machines are not in fact exchanged for money or other things of value, as more fully stated in this opinion." (Our italics.)

In *Fairchild, Prosecuting Atty., etc.* v. *Schanke, et al.* (1953), 232 Ind. 480, 492, 113 N. E. 2d 159, we declared the purpose of the 1953 Act to be as follows:

"The expressed purpose of the act is to prohibit 'gambling' and 'professional gambling' as defined in the act. The evil sought to be reached by its provisions is identical to the purpose, and we can see no reasonable basis or 'fair reason for the law

that would not require with equal force its extension to others whom it leaves untouched' (excluded)."

The purpose of the 1955 Act, as amended by the 1957 Act, is to prohibit "professional gambling" as defined in the Act.

The appellant in *Ferguson* v. *State* (1912), 178 Ind. 568, 99 N. E. 806, 42 L. R. A. (N. S.) 720, Ann. Cas. 1915C 172, was convicted of "keeping a gaming device" in violation of a statute[1] which provided,

> "Whoever keeps or exhibits for gain, or to win or gain money or other property, . . . any gambling apparatus, device, . . . or machine of any kind . . . for the purpose of betting or gaming, . . ."

Appellant there contended that the evidence was not sufficient to show that the machine was a gaming device. The machine involved was operated by the player depositing a nickel in a slot, then turning a crank, whereupon the machine would automatically pay a reward. The machine would always pay to the player a package of chewing gum and sometimes, in addition thereto, would pay one or more checks which could be used in playing the machine in the same manner as nickels were used. The machine was equipped with indicators which informed the player as to what the reward would be before each play.

At page 571 of 178 Ind., page 807 of 99 N. E., this court said:

> "The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's pro-

---

1. Acts 1905, ch. 169, §565, pp. 584, 718.

pensity to gamble, and that is the vice at which §2474, *supra,* [Acts 1905, ch. 169, §565, p. 718] is directed."

A pinball machine which awards a recorded right of replay is no more "harmless in itself" than was the machine involved in *Ferguson* v. *State, supra.*

In *Fairchild, Prosecuting Atty., etc.* v. *Schanke, et al., supra* (1953), 232 Ind. 480, 492, 113 N. E. 2d 159, we held that the 1953 Act was "concerned with and related to the public morals, safety and welfare." The general purpose to be accomplished by both the 1953 Act and the 1955 Act, as amended, is the same.

If the 1953 Act was concerned with and related to the public morals, safety and welfare, it must be said, in all fairness, that the Act here in question is related to the public safety and welfare. It certainly is as much in the interest of the public safety and welfare to prevent gambling by the use of pinball machines, which are especially designed and built so they can be and are, as shown by the evidence in the record here, used for that purpose, as it is to prevent gambling by the use of slot machines and other gambling devices.

Pinball machines which automatically record the right of replay have been held to be gambling devices, despite the fact that no money or prizes are given to players, in other jurisdictions under statutory provisions similar to those here in question. See: *State* v. *Paul* (1957), 43 N. J. Super. 396, 128 A. 2d 737, 741; *State* v. *Bally Beach Club Pinball Machine* (1956), 119 Vt. 123, 119 A. 2d 876, 879; *Westerhaus, Inc.* v. *City of Cincinnati* (1955), 71 Ohio L. Abs. 353, 127 N. E. 2d 412, 417; *People* v. *Meyers* (1957), 5 Misc. 2d 806, 162 N. Y. S. 2d 247, 249.

Cf: *McNeice* v. *City of Minneapolis* (1957), 250 Minn. 142, 84 N. W. 2d 232, wherein the Supreme Court of Minnesota held that it was the legislative intent not to proscribe as gambling devices pinball machines which merely award free replays to a player achieving a certain score, provided that such replays were not used as a system of making "payoffs" in cash or merchandise. In that case, however, the court, at page 237 of 84 N. W. 2d, by dicta, said:

> "The legislature could have in the meantime (as the State of New York has done by 39 McKinney's Consol. Laws of New York Ann., Penal Law, c. 40, §982) prohibited by statute this kind of free-play machine."

Section 10-2330, *supra,* does not violate or invade any fundamental right of the citizens of Indiana, and pinball machines, as described therein, come clearly within the ambit of the police power,[2] and the Legislature, by the exercise of such power, had the right to proscribe them and their use.

*Second:* Appellants further assert that the 1955 Act, as amended by the 1957 Act, constitutes class and special legislation in violation of Art. 1, §23 of the Constitution of Indiana, and the 14th Amendment of the Constitution of the United States, because such Act proscribes "the use of certain pinball machines for 'professional gambling' but, by omission, approving [approves] their use by private homes, religious, patriotic, charitable or fraternal clubs, etc."

Appellees contend that "[n]ot only is there no valid classification, there is no classification at all."

Acts 1955, ch. 265, §1, p. 713, being §10-2329, Burns' 1956 Replacement, provides, as follows:

2. *Terry* v. *City of Portland* (1954), 204 Ore. 478, 269 P. 2d 544.

"It is hereby declared to be the policy of the general assembly, recognizing the close relationship between professional gambling and other organized crime, *to restrain all persons* from seeking profit from professional gambling activities in this state; *to restrain all persons* from patronizing such activities when conducted *for the profit of any person;* to safeguard the public against the evils induced by common gamblers and common gambling houses; and at the same time to preserve the freedom of the press and to avoid restricting participation by individuals in sports and social pastimes which are *not for profit, do not affect the public,* and do not breach the peace. All the provisions of this act [§§10-2329—10-2336] shall be liberally construed to achieve these ends, and administered and enforced with a view to carrying out the above declaration of policy." (Our italics.)

Acts 1957, ch. 205, §1, p. 425, being §10-2330, Burns' 1959 Cum. Supp., provides, in pertinent part, as follows:

" 'Professional gambling' means . . . maintaining . . . pinball machines which award anything other than an immediate and unrecorded right of replay, . . . in any place accessible to the public; . . ."

Acts 1955, ch. 265, §3, p. 713, being §10-2331, Burns' 1956 Replacement, provides, in pertinent part, as follows:

"*Whoever* engages in professional gambling, or knowingly causes, aids, abets or conspires with another to engage in professional gambling shall upon conviction . . ." (Our italics.)

Acts 1955, ch. 265, §4, p. 713, being §10-2332, Burns' 1956 Replacement, provides, in pertinent part, as follows:

"*Whoever* knowingly owns, manufactures, possesses, buys, sells, rents, leases, stores, repairs or transports any gambling device, or offers or solicits any interest therein, whether through an agent or

employee or otherwise, shall upon conviction . . ." (Our italics.)

We do not agree with appellants that the phrase "in any place accessible to the public" creates any privileged class, or permits the unrestricted use of such pinball machines in private homes, clubs or other non-profit organizations, or in any other place not accessible to the public. We do, however, agree with their statement (page 82 appellants' brief) that:

> "The avowed and promulgated legislative purpose was to prohibit the patronizing of such devices only 'when conducted for the profit of any person,' when conducted in 'any place accessible to the public,' and when free replays were 'recorded' for the information of the distributors and location owners."

The phrase "in any place accessible to the public" cannot be construed standing alone, but in order to ascertain the legislative intent it must be construed in the light of the entire 1955 Act as amended. *Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra* (1957), 237 Ind. 33, 51-52, 142 N. E. 2d 610; *Book* v. *State Office Bldg. Comm. et al.* (1958), 238 Ind. 120, 149 N. E. 2d 273; 26 Ind. Law Encyc., Statutes, §122, p. 329.

Section 1 of the 1955 Act restrains *all persons* from seeking profit from professional gambling.

The 1957 Amendment, in addition to that quoted above, defines professional gambling as,

> ". . . accepting or offering to accept, for profit, money, credits, deposits or other things of value risked in gambling, or any claims thereon or interest therein. . . . and conducting lotteries, gift enterprises, or policy or numbers games, or selling chances therein; . . ."

Section 10-2331, *supra,* begins, *"Whoever* engages in professional gambling . . ." (Our italics.)

Section 10-2332, *supra,* begins, *"Whoever* knowingly owns, . . ." (Our italics.)

Considering the provisions of the above pertinent sections together, it is apparent to us that *anyone* who accepts or offers to accept, for profit, money, credits, deposits or other things of value risked in gambling is guilty of professional gambling, and upon conviction thereof may be punished as provided in §10-2331, *supra.* No one and no special class of citizens is exempt from the punishment provided, if he or they are found guilty of having done the things which under the Act constitute professional gambling.

Does the phrase "in any place accessible to the public" create a special class?

Subsection 3 of §2 of ch. 147 of the Acts of 1953 is re-enacted verbatim by subsection 3 of §2 of ch. 265 of the Acts of 1955, and by §1 of ch. 205 of the Acts of 1957, except the descriptive clause "which award anything other than an immediate right of replay," following the words "pinball machines," is added in the 1955 Act, and the words "and unrecorded" following the word "immediate" are further added in the 1957 Act.

Subsection 8 of §2 of the 1953 Act specifically excluded "bona fide religious, patriotic, charitable or fraternal clubs," from the provisions of the Act. Since the Legislature, in the same section in which the phrase "in any place accessible to the public" appears, excluded these specified clubs from the provisions of the Act it seems to us that such specifically excluded clubs were not intended to be covered by the phrase "place accessible to the public."

The re-enactment of this provision by both the 1955 and the 1957 sessions of the Legislature, after the 1953

Act had been declared unconstitutional,[3] would seem to confirm this reasoning.

It is true, however, as appellants state, that the question of the meaning and effect of the phrase "in any place accessible to the public" has not heretofore been raised in this court.

It should be stated here that in our opinion this phrase has no application to the first sentence in subsection 3 of §10-2330, *supra*, nor to the last clause in the paragraph, but applies only to pool selling and bookmaking and the maintaining of machines and devices specifically named in the clause beginning "maintaining slot machines" and ending with the word "public."

"Accessible" is defined by Webster as "easy of access" and as "admittance—admission."

Webster defines "public" as "open to common and general use, participation, or enjoyment" of the public. It has been held that the term "public place" as used in statutes pertaining to gambling, includes any place which for the time being is made public by the assemblage of people who go there with or without invitation and without restraint. *Roberts* v. *State* (1908), 4 Ga. App. 207, 60 S. E. 1082, 1085.

A place may be accessible to the public for gambling notwithstanding that every person who desires is not permitted access thereto. *Lockhart* v. *The State* (1853), 10 Tex. 275, 276.

It has also been held in a case involving a prohibition law that by "public" is meant that the public is invited to come to the place and has access to it for the purpose within the scope of the business there maintained. *Brooks* v. *State* (1916), 19 Ga. App. 3, 90 S. E. 989, 991.

3. *Fairchild, Prosecuting Atty., etc.* v. *Schanke, et al.* (1953), 232 Ind. 480, 113 N. E. 2d 159.

"Accessible to the public" as used in the Act here in question has not been defined by either of the courts of appeal of this State, nor have we been able to find a definition by the courts in other jurisdictions.

From a consideration of the terms "accessible," "public," and "public place," as defined hereinabove, together with the purpose of the Act, we have concluded that the phrase "in any place accessible to the public" as used in §10-2330, *supra,* means any place where the public is invited and are free to go upon special or implied invitation—a place available to all or a certain segment of the public.

We reaffirm the rule governing the application of Art. 1, §23, as quoted in *Fairchild, Prosecuting Atty., etc.* v. *Schanke, et al., supra* (1953), 232 Ind. 480, at page 487, 113 N. E. 2d 159, at page 162. See also: *Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra* (1957), 237 Ind. 33, 43, 142 N. E. 2d 610.

It is clear from the purpose of the Act, as stated in §10-2329, *supra,* that the Legislature intended to distinguish between "professional gambling" as defined in the Act, and "social pastimes" not for profit, and which do not affect the public. It seems to us that such classification is based on a substantial distinction with reference to the subject of gambling.

The purpose of the Act, as we have hereinbefore stated, is primarily to prohibit *all persons* from seeking profit from gambling within the State. In order to make a profit on the operation of pinball machines it seems obvious that they must be maintained in a place to which the public, or a certain segment thereof, sufficient to make the business profitable, has access, either by special or implied invitation, for the purpose of playing the machines.

The word "public" is used here in a sense as distinguished from private individuals engaged in "social pastimes" not for profit.

It is apparent from an examination of the entire Act and its history that the Legislature recognized that many of the evils stemming from gambling arise from places which are accessible for these purposes, i.e., "pool-selling and bookmaking; maintaining slot machines, one-ball machines or variants thereof, pinball machines which award anything other than an immediate and unrecorded right of replay, roulette wheels, dice tables, or money or merchandise pushcards, punchboards, jars or spindles," to a sufficient number of people to make the enterprise profitable.

There is an ample and cogent reason for the classification. Its purpose is reasonable, and it treats all who maintain such games or devices "in any place accessible to the public" alike. *Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra* (1957), 237 Ind. 33, 42-43, 142 N. E. 2d 610.

It is argued that a pinball machine which records the right of replay could be maintained in a private home with immunity. This might be true if used as a social pastime, without profit, and its maintenance did not affect the public or breach the peace.[4] However, a private home becomes a public place if, and when, put to a business use. *White* v. *State* (1898), 39 Tex. Cr. R. 269, 45 S. W. 702 (Rehearing 39 Tex. Cr. R. 271, 46 S. W. 825.) Cf.: *State* v. *Tincher* (1898), 21 Ind. App. 142, 145, 51 N. E. 943.

The proscription of pinball machines with recorded right of replay in any place accessible to the public by

---

4. Acts 1955, ch. 265, §1, p. 713, being §10-2329, Burns' 1956 Replacement.

§10-2330, *supra*, rests upon a reasonable basis. The reason for the classification is inherent in the subject-matter and the Act treats alike all who come within its provisions, under the same conditions, and it embraces all who naturally belong to the class. Having these qualifications it does not violate the provisions of Art. 1, §23 of the Constitution of Indiana, or the 14th Amendment of the Constitution of the United States.

*Third:* Appellants further assert that "whoever" as used in §4 of the Act (§10-2332, *supra*) "is only the 'professional' gambler defined in the Acts." We are unable to see wherein this section does not conform to the purpose of the Act. As we have hereinabove said, the purpose of the Act is to prohibit all persons from seeking profit from gambling as defined in the Act. It seems to us that the most effective way to prevent the making of a profit from professional gambling would be to prohibit the manufacture, possession, renting, leasing and transporting of devices used in such gambling.

It will be noted that subsection 4 of §10-2330, *supra*, merely defines gambling devices. It makes no reference to professional gambling but does come within the title of the Act which is "An Act concerning the crime of gambling, and providing penalties therefor."

While §10-2331, *supra*, provides a penalty for those convicted of "professional gambling," §10-2332, *supra*, makes the possession, etc. of "any gambling device" as defined in subsection 4 of §10-2330, *supra*, a crime.

Whether or not the possession of pinball machines with the recorded right of replay should be made a crime in Indiana is a matter of policy to be determined by the Legislature and not by the courts.

Since the provisions of subsection 4 of §10-2330, *supra,* are covered by the title of the Act, it is our opinion that §10-2332, *supra,* applies to *anyone* whose conduct brings him within its provisions, regardless of whether he may, or may not, be a "professional gambler" as defined in subsection 3 of §10-2330, *supra.*

Persons who knowingly own, rent, lease or possess any gambling device, as defined in the Act, whether they are placed or stored in places accessible to the public, or in private homes, religious, patriotic, charitable, or fraternal clubs are subject to the penalty provided in §10-2332, *supra.* If such devices are operated by such persons for profit, they are then guilty of "professional gambling" and subject also to the penalty provided in §10-2331, *supra.* Under such circumstances there can be no penalized or privileged class.

*Fourth:* Whether or not the trial court erred in finding "[t]hat it is possible to have a computer on these [appellants'] machines which would award an unrecorded free game for immediate replay, and that a recorder is not necessary for the machine to release the balls for an immediate replay game," is not material since the Legislature was acting within its constitutional powers in designating pinball machines which record the right of replay as gambling devices, and providing that anyone maintaining them in any place accessible to the public is guilty of professional gambling as defined in the Act. Hence, appellants' point three as discussed in their brief need not be further considered. Also, for the above reason, it is not material here that the trial court found "that in-line or bingo machines are used for professional gambling and have no other purpose" as discussed under point nine of appellants' brief.

*Fifth:* Appellants assert, under point six of their brief, that ch. 205 of the Act of 1957 is unconstitutional because it "impairs appellants' contracts and deprives them of their liberty to enjoy property, their freedom to choose a calling, and deprives these citizens of their property without due process." If the use and "maintaining" of pinball machines involved herein are legally proscribed by the Legislature, as we have hereinabove held, appellants cannot complain that they are prevented from conducting a business (of maintaining such machines) which is unlawful and thus are deprived of their property without due process of law.

*Sixth:* Appellants further assert that the playing of pinball machines involves a substantial degree of skill and, therefore, they cannot properly be classified as gambling devices.

It is true that in *Tinder, Pros. Atty., et al.* v. *Music Op. Inc., supra* (1957), 237 Ind. 33, at page 41, 142 N. E. 2d 610, at page 615, we said:

"However, in the operation of the machines with which this case is concerned, skill is a predominant factor in determining the award of a prize. These machines are equipped with 'flippers,' by which the player controls the play of each ball. In fact, the conferring of a prize (free play) is improbable unless the player can operate these flippers with a considerable degree of skill. This distinction is recognized in the case of *State* v. *Coates, supra* [(1937), 158 Ore. 102, 74 P. 2d 1120, 158 Ore. 122, 132, 74 P. 2d 1102] in which the element of skill did not exist. In that case the Court stated: '. . . If any substantial degree of skill or judgment is involved, *it is not a lottery.* . . .' " (Our italics.)

The Tinder Case is not authority for appellants' contention here because in that case we decided only that

the operation of such machines as were therein involved did not, as contended, constitute a lottery and were not illegal under the lottery statute.[5] In the present case the statute makes the "maintaining" of the type of machines that are here involved (those which record the right of replay) *mala prohibita.*[6]

*Seventh:* The Acts here in question are, in our opinion, sufficient to inform anyone arrested for violating the provisions thereof of the particular crime with which he is charged. While the Act leaves many things to be desired before it could be recommended as a model form of legislation, yet we think it is sufficiently general in scope, specific and unambiguous in its provisions to inform the public when the Act is being violated. This is sufficient to sustain the Act as against the charge that it is "vague, indefinite in its scope and definitions." *Caudill* v. *State* (1946), 224 Ind. 531, 534, 69 N. E. 2d 549; *Guetling* v. *State* (1926), 198 Ind. 718, 726, 153 N. E. 765.

In our opinion the proscription of pinball machines here in question was a proper subject for the exercise of the police power. Whether in so exercising it the Legislature acted wisely or unwisely is not for this court to say. Invoking all presumptions[7] in favor of the validity of the law here before us, we must affirm the judgment of the trial court.

Judgment affirmed.

Arterburn, C. J., Jackson and Landis, JJ., concur.

Achor, J., not participating because of illness.

NOTE.—Reported in 167 N. E. 2d 48.

---

5. Acts 1905, ch. 169, §555, p. 584, being §10-2302, Burns' 1956 Replacement.
6. See Anno. 135 A. L. R. 104. Anno. 148 A. L. R. 879.
7. *City of Aurora v. Bryant* (1960), 240 Ind. 492, 165 N. E. 2d 141, 144.