(No. 7188.   February 14, 1945.)

EDMOND THAMART, Appellant, v. A. A. MOLINE, Sheriff of Canyon County, Idaho; V. K. JEPPESEN, Prosecuting Attorney for Canyon County, Idaho; and JOHN WAKEFIELD, Chief of Police of Nampa, Canyon County, Idaho, Respondents.

[156 Pac. (2d) 187.]

R. W. Beckwith and J. F. Martin for appellant.

V. K. Jeppesen, Prosecuting Attorney, for respondents.

AILSHIE, C. J.—This is an action for injunction against defendants (respondents herein), to enjoin and restrain them from seizing or taking possession of certain alleged "amusement machines" owned by plaintiff (appellant). Since December 20, 1941, the machines have been located in several drive-inns and confectionery stores in Nampa, "to be operated for the enjoyment and use of the public", being "designed for use in playing a game known as 'Marbles'". Plaintiff alleges:

"The game is played by placing a nickel in a money slot which releases five metal marbles which can be shot onto the top of the playing table by a plunger. If certain knobs are struck by the marble five additional shot are given the player, as indicated by the score on the blackboard, until all marbles are used and the game finished as indicated on the blackboard. The only cost to the player is the nickel to start the game. The game is not played for money, checks, credit or any other representative of value, and all the player receives is the amusement derived from playing the game."

Respondents contend that the machines described by appellant are "the usual pinball machines"; that the case of *Pepple v. Headrick,* 64 Ida. 132, 128 P. (2d) 757, is controlling in this case; in the Pepple-Headrick case, "a coin or coins were given free or upon chance, while in the present case a free game or games may be obtained by the player upon the happening of certain chance events in the operation of the machine." Defendants (respondents) demurred to plaintiff's complaint and prayed that it be dismissed, which demurrer was sustained by the court and the

action ordered dismissed. Judgment was entered sustaining the demurrer and from this judgment plaintiff appeals.

Appellant justifies his claim, that the game is not played for anything of value, under sec. 17-2301, I.C.A., known as the Anti-gambling statute, which reads as follows:

"Every person who deals, plays or carries on, opens or causes to be opened, or who conducts, either as owner, employee, or lessee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, Indian stick game, or any game played with cards, dice, or any other device, for money, checks, credit or any other representative of values, is guilty of a misdemeanor and is punishable by fine not less than $200, or imprisonment in the county jail not less than four months."

The decision in this case must turn on a single question, namely: Is the chance the player takes, in getting extra plays, if he hits certain knobs, a "representative of value"; or perhaps, to put it in another way, is amusement, or the right to participate in the game or to shoot the balls used in playing the game, a thing of value?

It is self-evident that the game here under consideration was one of "chance"; in other words, unless he is successful in hitting a certain definite knob, he only gets five shots with the marbles. But if he is successful in hitting this particular knob, then he gets five extra shots. It is clear, therefore, that if the player is successful in hitting the chance knob, he will get five cents worth more amusement than he would have had without being successful in the chance shot; that is to say, he is either hazarding his five cents that he first puts into the machine or else he is hazarding five extra plays. If amusement isn't a "representative of value", then it is self-evident that the American people are throwing a lot of money away without getting any value for it. As quoted in *Pepple v. Headrick,* supra, it has been estimated that $20,000,000 are spent on these devices "for amusement" in the city of New York alone annually.

It is argued, however, that the granting of additional plays on the machine does not come within any of our statutory terms, "money, checks, credit, or other representative of values", and that, in order to be included therein, the prohibited feature must be of the same kind

and class described in the statute. This argument is not thought sound. "Credit", while evidenced by tangible means, is entirely an intangible right (15 C.J., p. 1350, n. 74) and covers an almost limitless field of transactions. The right to play *again* or additional games clearly falls within the meaning of the word "credit" and is certainly a right of "value".

We have had different phases of the statute before us here in Idaho. In *Mullen v. Moseley,* 13 Ida. 457, 469, 90 P. 986, we said:

"Gambling itself was a nuisance at common law and is in no better plight now that it has been specifically designated as a crime by our statute, and it therefore appears that the instruments and devices by and with which it is carried on must themselves be nuisances." (Citing many cases).

Again, in the later case of *Pepple v. Headrick* (Ida.), 128 P. (2d) 757, 760, we said:

"The act before us now contains no word of limitation or modification and does not pretend to limit its prohibitive terms to only such games and devices as previously enumerated, but places a prohibition on 'any other device,' employed in gaming and gambling. The members of the legislature, who enacted this statute, were men of experience and were undoubtedly conscious of the difficulty of trying to enumerate all the various games and devices the gambling genius of men might contrive for games of chance; and so, after enumerating those currently employed, they sought to anticipate what subsequently happened, viz., the invention and manufacture of new devices designed *to intrigue the unwary and arouse the latent cupidity of human nature* into the notion that it could get something for nothing, or amusement out of paying tribute to what have aptly been quipped, 'bandit machines' ". (Italics supplied).

The courts are somewhat divided on their holdings on this issue but by far the abler and more rational construction has been made by the courts that hold that amusement is a thing (*"representative"*) of value. For illustration, the supreme court of New Mexico, in *Giomi v. Chase,* 132 P. (2d) 715, 717, has said:

"Although there is some authority to the contrary, the

texts and better reasoned cases support the view that amusement is a thing of value under statutes of similar purport to ours. (citing many authorities) . . . .

"A study of our statute satisfies us, conformably to the weight of authority and reason, that when the legislature denounced and rendered unlawful 'any. . . games of chance, played with. . . slot machines or any other gaming device. . . for money or *anything of value*', (emphasis ours), it purposely refrained from attempting any enumeration of the multitude of items constituting 'value', tangible and intangible, comprehended within the phrase 'anything of value'. No doubt the legislature, mindful of the ingenuity ever employed to escape the interdiction of anti-gambling laws, reasoned that if it adopted an all embracing, all consuming phrase, such as this, its true meaning and intent could not be defeated by subtle and refined construction. . . We have no right to fritter away its meaning by artful construction. . . amusement is a thing of value. Of this there seems no room for argument. The player at a pinball machine proves it when the deposits his five cent coin for the privilege of playing it. And the correctness of the assertion is but emphasized if the lure and inducement to the first play spring from the hope that before it is ended, luck will favor the player by awarding him additional free games. If, as one of the quoted opinions says, the prize were a theatre ticket, none would question it as constituting value. The fact, however, that the stake won is small does not alter the verity of the principle involved."

The South Carolina court, in *Alexander v. Martin*, 6 S.E. (2d) 20, 23, speaking of amusement, had this to say:

"Amusement is recognized by the Courts as a thing of value, and where the amount of amusement given the player of the machine is determined by chance or hazard, such machine is held to be a gambling device. . . 'Whoever plays the device and obtains tokens therefrom receives more value for his nickel, with respect to the amount of amusement obtained, than the player who receives none at all. The player who receives ten tokens receives more value for his nickel, with respect to the amount of amusement, than the player who receives only two. . . Consequently, the amount of amusement a player receives for his nickel, by virtue of the return of the tokens, is dependent wholly

upon chance. The greater the amount of amusement received, the more valuable the prize.' "

The annotator in 81 A.L.R. 178, in reviewing the opinion in *Snyder v. Alliance*, 41 Ohio App. 48, 179 N.E. 426, said:

". . . . a patron received something of value from continuous play, 'for amusement is a thing of value, for which more money is spent perhaps than for any other purpose;' and added that the amusement was not furnished to all patrons in the same quantity at the same cost. . . . the player gambles not on the immediate return for the coin he deposits, but on the hope or chance that the indicator will show a profit on his next play."

The court, in *Gibson v. Martin*, 308 Mich. 178, 13 N.W. (2d) 252, in its first syllabus, stated:

"Pinball machines, whereby amusement given by the machine was chance to get either money or free games, were 'gaming devices'."

Again, in *State v. Betti*, 21 N.J. Misc. 345, 34 A. (2d) 91, 94:

"If a pinball machine will render free games after simple changes are made in its mechanism it is a gambling device, . . . . Anything which affords the lure to indulge the gambling instinct, is a valuable thing within the meaning of the statute, *Hunter v. Mayor, etc., of Teaneck*, (24 A. (2d) 553) and 'amusement' is a thing of value, *People v. Gravenhorst*, (32 N.Y.S. (2d) 760) and it has been held repeatedly that the chance of receiving the privilege of continuing amusement of this kind without charge is a valuable thing, (citing many cases) . . . ."

The supreme court of Oklahoma in *Mackay v. State*, 83 P. (2d) 611, 614, quoted from the case of *Colbert v. Superior Confection Co.*, 154 Okla. 28, 6 P. (2d) 791, saying:

" 'If the act in question applied only to things of value, we think that the amusement held out as an inducement is a thing of value sufficient to bring these machines within the plain provisions of the act. We are of the opinion that the act is applicable without regard to the value of the things held out as an inducment to the playing of the machine.' "

In *State v. Mint Vending Machine, etc.*, 84 N.H. 22, 154 A. 224, 227, the court said:

"At that time (1901), slot machines dispensing by chance money, or trade checks redeemable in money or merchandise, had come into common use in this state and elsewhere. Their manifest lure to improvidence was such as to induce prosecutions, and to lead to added legislation directed to their suppression, in many jurisdictions. . . . The act drives at the evils of indulging the natural tendency to gamble by disregarding, as far as may be, the element of value in the stake. If it could be said that the qualifying words 'of value' are to be implied, the phrase read in the light of the legislative purpose would be no more than a concrete expression denoting any inciting force sufficient to induce the risk. It would be satisfied by any 'thing' affording the necessary lure to indulge the gambling instinct. Any incitement which would impel the player to stake his money on a chance of winning would produce the evil consequences at which the enactment is aimed. We have to conclude that it was the intention of the Legislature to declare a slot machine a gambling implement whenever the thing played for was a sufficient inducement to its patrons to encourage them to hazard or chance money beyond the purchase of the article which the machine vends, if any."

And, in *Green v. Hart* (D.C.), 41 F. (2d) 855, the court stated:

"Combining the element of chance with the inducement of receiving something for nothing results in gambling."

In *State ex rel Manchester v. Marvin*, 233 N.W. 486, 487, the supreme court of Iowa had this to say:

"It must be held, therefore, that the machine in question was a gambling device within the meaning of the statute. It may be conceded that the gambling feature was of a very mild form, and that the offense might well be pardoned upon a plea of penitence and of purpose to desist. But it furnishes poor standing ground for the intervener to ask of the courts a certificate of character for such device."

The supreme court of Maryland, in *Gaither v. Cate*, 156 Md. 254, 144 A. 239, 244, said:

". . . . if the only thing these machines were used for was amusement, the method of affording that amusement,

and the quantity thereof, is determined by chance, and, while the appeal thereby made to gamble may not be as strong as where the stakes are greater, nevertheless it does encourage such spirit. But aside from the question of amusement, as we have already indicated, it is our conclusion, reached from the record in this case, that these devices (mint-vending machines and other discs and checks) were manufactured and are being used for the purpose of gambling, and that a court of equity ought not to protect the device or the owner by granting an injunction in this case."

Opinions from the New Hampshire, District of Columbia, Iowa, and Maryland courts (quoted above) were all cited and quoted from in the case of *Painter v. State of Tennessee,* 163 Tenn. 627, 45 S.W. (2d) 46, 81 A.L.R. 173, 175, wherein the court said:

"The issue is not controlled by the fact that the stakes to be played for are trifling. The fundamental and underlying principle of the offer made by the device to the customer is one of chance and hazard, and falls within the letter and spirit of the statute."

(See, also, 24 Am. Jur., p. 408, sec. 14, note 5; id, p. 423, sec. 35, n. 9.)

It therefore appears that, if the player turns out to be lucky, he may win any number of free plays up to five on his first nickel; so, also, he may win a chance for free plays on any single play which results from the deposit of his first nickel. It can be seen at once that the machine constitutes a continuing lure to the player to seek more "amusement". The chief vice in this is the fact, that it is of small and trifling value and lures children and inexperienced persons into the habit of spending their money on these "chance amusements", which it is evidently the intent of the legislature to prohibit.

We conclude that the statute prohibits the marble games described herein and that if a change is to be made in the law, it should be made by the legislature and not by the court.

The judgment is affirmed.

Budge, Givens, Holden, and Miller, JJ., concur.