JOHN R. McNEICE v. CITY OF MINNEAPOLIS AND ANOTHER.

84 N. W. (2d) 232.

June 28, 1957—No. 37,026.

*Miles Lord,* Attorney General, *Robert W. Garrity,* Deputy Attorney General, *John R. Murphy,* Assistant Attorney General, *Charles A. Sawyer,* City Attorney, and *Raymond H. Hegna,* Assistant City Attorney, for appellants.

*Maslon, Kaplan, Edelman, Joseph & Borman,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment declaring that the type of pinball machine which the plaintiff had been maintaining on his premises did not constitute a gambling device or a lottery within the meaning of M. S. A. 614.01, 614.06, and 614.07. The judgment of the trial court also enjoined the city of Minneapolis and all of its officers and agents from enforcing the order of the city's superintendent of police to confiscate all pinball machines which were designed to give free plays to a player attaining a certain score. This order had been issued in accordance with an opinion of the attorney general of Minnesota which had been issued on December 12, 1955, to the effect that pinball machines which awarded free games to their players were gambling devices within the meaning of §§ 614.06 and 614.07. See, Opinion Attorney General, No. 733-D, December 12, 1955.

The pinball machine involved in this case had been maintained by the plaintiff at his place of business, commonly known as an amusement arcade, located at 812 Hennepin Avenue in Minneapolis, until December 15, 1955, when the superintendent of police issued the aforementioned order. The machine is known as a "one nickel-five ball machine." The player can insert only one nickel for a single game. Upon doing so, five metal balls are released. These balls are propelled one at a time onto the playing board of the machine by pulling and releasing a plunger. The score which the player attains is dependent on the route which these balls take while they are on the playing board, what contacts the balls make, and into which appertures the balls fall. If a certain score is attained, the player is rewarded by being allowed to play an additional number of games on the machine without inserting any more nickels.

Basing its argument on the premise that a free-play pinball machine is by reason of its inherent character a gambling device and calling attention to social implications which are said to make its use one which is in violation of the gambling laws, the state, supported by a considerable body of authority, earnestly argues that the machine is in fact a gambling device within the meaning of §§ 614.06 and 614.07.

■ There is a sharp division of authority on the question of whether a pinball machine awarding only free replays constitutes a gambling device. It appears that in those jurisdictions where the statutes do not expressly mention whether such machines are illegal, the determination is left to the courts. In those jurisdictions where the statutes do not expressly mention free-play machines, the majority holding is that free plays as an award for successful operation of pinball machines do not constitute property or a thing of value. Washington Coin Machine Assn. v. Callahan, 79 App. D. C. 41, 142 F. (2d) 97; Chicago Patent Corp. v. Genco, Inc. (7 Cir.) 124 F. (2d) 725; Davies v. Mills Novelty Co. (8 Cir.) 70 F. (2d) 424; Mills Novelty Co. v. Farrell (2 Cir.) 64 F. (2d) 476; State v. Waite, 156 Kan. 143, 131 P. (2d) 708, 148 A. L. R. 874; State v. One Bally Coney Island No. 21011 Gaming Table, 174 Kan. 757, 258 P. (2d) 225; State v. Betti, 23 N. J. Misc. 169, 42 A. (2d) 640; Overby v. Oklahoma City, 46 Okl. Cr. 42, 287 P. 796; Wigton's Return, 151 Pa. Super. 337, 30 A. (2d) 352; Commonwealth v. Kling, 140 Pa. Super. 68, 13 A. (2d) 104; State v. One "Jack and Jill" Pinball Machine (Mo. App.) 224 S. W. (2d) 854; Crystal Amusement Corp. v. Northrop, 19 Conn. Supp. 498, 118 A. (2d) 467; Gayer v. Whelan, 59 Cal. App. (2d) 255, 138 P. (2d) 763. But, see, Thamart v. Moline, 66 Idaho 110, 156 P. (2d) 187; State v. Bally Beach Club Pinball Machine, 119 Vt. 123, 119 A. (2d) 876; State v. Wiley, 232 Iowa 443, 3 N. W. (2d) 620; Giomi v. Chase, 47 N. Mex. 22, 132 P. (2d) 715.

From an examination of the numerous authorities cited, it appears that a number of courts have extended old definitions of gambling to apply to any type of pinball machine. This policy has been carried to the point where appellate courts of Illinois have said that a free-play pinball machine is a subterfuge, that it is a gambling device per se, and that "Their common use as gambling devices is what condemns them" without any evidence as to proof. People v. One Pinball Machine, 316 Ill. App. 161, 173, 44 N. E. (2d) 950, 956; People v. One Mechanical Device, 9 Ill. App. (2d) 38, 132 N. E. (2d) 338. In reversing the latter case, 11 Ill. (2d) 151, 155, 142 N. E. (2d) 98, 100, the Supreme Court of Illinois said:

"We are of the opinion that a free play is neither money, the equiva-

lent of money, nor a valuable thing. It is unrealistic to hold that the possibility of winning a greater or lesser amount of amusement is gambling because if it were, most amusement games would be barred by the statute."[1]

A further discussion of the cases from other jurisdictions would serve no useful purpose because the holdings in such cases depend to a considerable degree on the wording of the various statutes which these jurisdictions have. The Minnesota statutes prohibiting gambling and the maintenance of a gambling device for the purpose of gambling, §§ 614.06[2] and 614.07,[3] do not define either "gambling" or "gambling

---

[1]The same view was expressed by the learned trial court, who held for the plaintiff below. In a well-considered and helpful memorandum he said: "In arriving at this conclusion, the court is well aware of the attendant evils which accompany the presence of pinball machines in commercial establishments. However, it seems quite plain that the legislature did not intend to prohibit or ban the possession or play of all pinball machines regardless of how they are played. The court is of the opinion that the free replays registered on the machine become objectionable only insofar as they are used as a measure of the cash or merchandise 'pay off' to be made by the proprietor to the player, but in like fashion, the score is also a measure of the 'pay off' to be made. It is the cash or merchandise 'pay off' which, in the opinion of this court, makes the pinball machine objectionable, and undoubtedly, as so used, the pinball machine is a gambling device prohibited by the anti-gambling laws. But the existence or non-existence of cash or merchandise pay offs on the play of pinball machines is question of proof and enforcement. The determination of that question indiscriminately with the determination of those things or devices which constitute gambling devices within the meaning of the anti-gambling statutes could, in many cases, lead to extreme results totally uncomprehended by the legislature."

[2]"Gambling with cards, dice, gaming tables, or any other gambling device whatever is hereby prohibited. Every person who deals cards at the game called 'faro,' 'pharo,' or 'forty-eight,' whether the same is dealt with 52 or any other number of cards, and every person who shall keep any gambling device whatsoever designed to be used in gambling shall be punished by imprisonment in the county jail for not more than six months or by a fine of not more than $200 or by both; and every person who shall bet any money or other property at or upon a gaming table, game, or device shall be punished by a fine of not less that $5.00 nor more than $20."

[3]"Every person who shall suffer any gaming table, faro bank, or gambling device to be set up or used for the purpose of gambling in any house,

device." However, a licensing statute enacted in 1947 which was designed and passed to effectuate the policy of prohibiting gambling does contain a definition of "gambling devices." Section 325.53, subd. 2 (L. 1947, c. 586) states: " 'Gambling devices' means slot machines, roulette wheels, punchboards, number jars and pin ball machines which return coins or slugs, chips, or tokens of any kind, which are redeemable in merchandise or cash." The clause "which are redeemable in merchandise or cash" was not in the definition as originally reported back to the House by the Committee on General Legislation.[4] It was included by a later amendment.[5] The purpose of the amendment was obviously to eliminate from the definition of gambling devices pinball machines which give free replays by returning slugs, chips, or other tokens to the player to be used only in playing the machine. Thus, the legislature clearly intended to exclude from the definition of gambling devices pinball machines which give free replays without returning any tokens to the player.

The state asserts that this definition of "gambling devices" which is found in § 325.53, subd. 2, should not be applied to the use of the same phrase in §§ 614.06 and 614.07. Even though § 325.53, et seq., deal with licensing, the primary, if not the sole, purpose behind their enactment was to eliminate gambling. In construing certain gambling statutes, this court said in Foley v. Whelan, 219 Minn. 209, 211, 17 N. W. (2d) 367, 369:

"* * * Statutes relating to the same subject matter, especially where they have the same purpose in view, are *in pari materia* and are to be construed together the same as if they constituted but one statute. * * * The object of the rule is to ascertain and carry into effect the intention of the legislature, and it proceeds upon the supposition that the several statutes were governed by one spirit and policy and consequently were intended to be consistent and harmonious in their several parts and

building, steamboat, raft, keelboat, or boom, lot, yard, or garden, owned, occupied, or controlled by him, shall be punished by imprisonment in the county jail for not more than six months or by a fine of not more than $200 or by both."

[4]See, Journal of the House, 1947, p. 884.

[5]See, Journal of the House, 1947, p. 1282.

provisions. \* \* \* All statutes relating to gambling are to be taken together as one law on the subject and as such are construed together."

In Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254, the issue was whether the Civil Damage Act (§ 340.95), which imposes a liability in favor of a third party injured by the intoxication of a purchaser of liquor, applies to a municipality. This court used the definitions of "person" found in the liquor control acts of 1934 and 1943 to find that the Civil Damage Act did apply to municipalities, and stated (238 Minn. 437, 57 N. W. [2d] 261):

"\* \* \* Although enacted at different times there can be little doubt that the legislature has regarded all three acts as supplementary to one another and as integral parts of a unified plan for controlling the sale and consumption of intoxicating liquor. When legislative acts involve a single subject or problem, there is an unusually strong reason for applying the rule of statutory construction that when statutes are *in pari materia* they are to be construed harmoniously and together."

Following the foregoing two cases in applying the doctrine of interpreting statutes in pari materia, we hold that the definition of "gambling devices" as found in § 325.53, subd. 2, also applies to that phrase as it is used in §§ 614.06 and 614.07. Under that definition, and especially in the light of the legislative history of that definition, pinball machines which merely award free replays to a player achieving a certain score are not gambling devices, provided of course that these replays are not used as a system of making "payoffs" in cash or merchandise. It was clearly the legislative intent that the use of machines such as the one involved in this case was not to be banned by the gambling statutes now in effect.

■ However much we might agree with the objectives the state seeks to accomplish, we are required to take the statutes as we find them. It is not for the court to encroach upon the legislative field by an interpretation which would in effect rewrite a statute so as to accomplish a result which might be desirable and at the same time conflict with the expressed will of the legislature. Section 325.53, subd. 2, has been in effect since 1947. The legislature could have in the meantime (as the State of New York has done by 39 McKinney's Consol.

Laws of New York Ann., Penal Law, § 982) prohibited by statute this kind of free-play machine. Moreover, at the 1957 general session of the legislature there was under consideration an amendment to § 614.02 which would have included "pinball machines" by name in the definition of "professional gambling" and provided in addition that, in the application of the definition of "gambling device," "the right of replay mechanically conferred on players of pinball machines and similar devices shall be deemed to be a thing of value." Senate File 1778. While this suggested amendment was contained in a proposed omnibus or comprehensive bill which may have failed for one of a number of reasons, the fact remains that the legislature has been aware of the problem and has not seen fit to disturb the definition as set forth in § 325.53, subd. 2, in 1947.

The appellants argue that the pinball machine here in question constitutes a lottery within the meaning of § 614.01. It is obvious that, if a free-play pinball machine does not constitute a gambling device, neither is it a lottery. Thus, Minn. Const. art. 4, § 31, which forbids the legislature from authorizing a lottery is in no way involved in this case.

Since the foregoing opinion was written the Supreme Court of the United States in United States v. Korpan, 354 U. S. 271, 77 S. Ct. 1099, 1 L. ed. (2d) 1337, held that pinball machines that give the player an option of receiving money instead of free games are gaming devices subject to tax imposed by the 1954 Internal Revenue Code, 68A Stat. 531, 26 USCA, § 4461(2). We do not think that decision controls the issue before us. The Korpan decision has to do with the interpretation of a law which imposes a tax on a gaming device defined as (68A Stat. 531, 26 USCA, § 4462[a][2]) "so-called 'slot' machines which operate by means of insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens." Moreover, the court observed: "It is clear that respondent's machines were operated by the insertion of a coin and that persons playing them could receive cash for any free games won." In contrast, the pinball machine involved in the case before us awards free games only and is not included in the definition of "gambling devices" as provided by § 325.53, subd. 2, the statute by which we are controlled.

It is further significant that the decision of the Supreme Court of the United States does not disturb the leading Federal authority on the subject of free-play pinball machines of Washington Coin Machine Assn. v. Callahan, 79 App. D. C. 41, 142 F. (2d) 97, which holds that under D. C. Code 1940, § 22—1504, the term "property" should not be extended to include "free play" or another "try" so as to constitute a free-play pinball machine a gambling device.

Judgment affirmed.