407 P.2d 309

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Mike FITZPATRICK, Defendant-Appellant.**

**No. 9718.**

Supreme Court of Idaho.

Oct. 29, 1965.

Jerry V. Smith, Lewiston, Rufus King, Washington, D. C., for appellant.

Allan G. Shepard, Atty. Gen., Weldon S. Wood, Asst. Atty. Gen., Boise, Roy E. Mosman, Pros. Atty., Lewiston, for respondent.

TAYLOR, Justice.

This proceeding was commenced pursuant to provisions of I.C. § 18–3804 for the seizure and destruction of a pinball machine owned by the defendant (appellant). The district court, on authority of Thamart v. Moline, 66 Idaho 110, 156 P.2d 187 (1945), held the machine to be a gambling device within the meaning of I.C. § 18–3801, and ordered its destruction. Execution of the order was stayed pending this appeal. The statutory definition of prohibited gambling devices (I.C. § 18–3801) so far as here involved is the same now as quoted in the Thamart case. After naming certain games, the language is:

"* * * or any game played with cards, dice or any other device for money, checks, credit or any other representative of values, * * *."

The machine involved is known as the Gottlieb "Flipper Parade" of the "Add-a-Ball" type, and is described in the stipulation of the parties as follows:

"The machine is a typical coin-operated pinball game in its essential features, namely, a table on legs with a glass-covered inclined surface upon which players may propel steel balls, one at a time by means of a spring plunger, in such a way that the balls descend through various gates, bumpers, and other obstacles the length of the playing surface; each ball in its

descent activates various contacts, depending on its course, which cause a cumulative numerical score to be indicated upon an upright backboard fixed to the end of the table facing the player.

"No evidence was offered, and it is not claimed, that the machine paid any prize or consideration in money, or was designed or adapted to award any monetary prize or consideration, directly or indirectly.

"No evidence was offered, and it is not claimed, that the machine awarded any additional 'free games' to players, or was designed or adapted to award any such additional 'free games,' directly or indirectly.

"No evidence was offered, and it is not claimed, that the machine was altered or modified in any way; at the time of being observed in play and at the time of seizure it was operating normally in accordance with its original design and manufacture."

Particularizing as to the "Add-a-Ball" type, the stipulation continues:

"For one coin (usually 10¢) the player is entitled to play one game. At the outset the machine allows him to shoot 5 balls (actually the same ball over the playing surface 5 times); if his score advances sufficiently in the course of the play, the machine allows him one or more additional balls (actually, one or more additional shots with the same ball), with which he can add to his score (and potentially win still more additional balls); when the last allowed ball is played the game ends, the machine deactivates, and another coin is required to reset the score to zero, reactivate the machine, and commence a new game."

and further:

"'Add-a-Ball' and 'Free Game' machines are equipped with devices known as 'flippers'—electrically operated strikers on the playing surface by which the player may strike the ball as it descends and thus affect its course and the score it will make. On all pinball machines the player may affect the course of the ball slightly by the way he operates the propelling plunger, and also by shaking the machine as the ball descends (though this is limited by adjustable 'tilt' controls). On all machines, and especially on those equipped with 'flippers,' the play is thus affected in part by the skill of the player; on all the outcome is also dependent in part upon chance (no player can *fully* control the descent of the balls on the playing surface)."

The player of the "Add-a-Ball" machine does not receive any free games. He cannot

affect the play or the odds in any way by the insertion of additional coins. When he pays the consideration for a game, the machine delivers the playing of that game to its conclusion and nothing else. There is no way to clear the machine or dispose of any balls remaining in an unfinished game except to play them off. The machine does not and cannot award any consideration extraneous to the play.

The machine here involved is to be distinguished from that involved in Thamart v. Moline, supra. The machine considered in that case was what is known as a "free game" machine, or the equivalent of a free game machine. The stipulation of the parties herein describes the operation of a "free game" machine as follows:

> "For one coin the player is entitled to play one game consisting of five shots of the ball over the playing surface. For high score the machine awards additional games (usually to a cumulative total of 15). If, at the end of a game the player has won (or accumulated) free games, he presses a button instead of inserting another coin, and the machine reactivates to allow additional play, game by game, until such free games are used up in play."

In Gayer v. Whelan, 59 Cal.App.2d 255, 138 P.2d 763 (1943), the California District Court of Appeal held "that securing the amusement of a free game or games on the machine, and nothing more," was not an award of a "representative or article of value" within the statute which banned machines giving such awards.

In McKee v. Foster, 219 Or. 322, 347 P.2d 585 (1959), the Oregon court held that a machine which gave a winning player the right to play again, did not give a "credit or other representative of value or evidence of winning," where the free game or right to play again was not redeemable in any other way than to play it on the machine.

The California and Oregon courts both held that the "representative of value" banned by the statute, referred to something of a material or tangible nature. Such interpretation of the statutory phrase is contrary to the holding of this court in Thamart v. Moline, supra, in which it was held that the amusement of a free game or the credit represented thereby was a right of value. We also recognize that the statutes of California and Oregon are dissimilar in some respects to our own. However, we cite those cases for the value they have in clarifying the issue presented.

In Peachey v. Boswell, 240 Ind. 604, 167 N.E.2d 48, 89 A.L.R.2d 801 (1960), the Indiana court was concerned with free game machines under a statute which outlawed machines which awarded anything other than an immediate and unrecorded right of replay. The court held that machines, equipped to record the number of free games

won by the player, were violative of the statute, under an amendment which exempted from its operations machines not so equipped. The court justified the legislative classification by observing that the recording of free games won, might be used to compute payoffs; whereas, it would be much more improbable that unrecorded free games might be exchanged for anything of value.

The machine here involved could not award a free game or any other measurable unit of credit or other representative of value. The successful player, whether by chance or by skillful operation of the flippers, could win only the right to extend the game. The successful player could take nothing away, either from the machine or the proprietor, and he could win nothing which conceivably could be exchanged for anything of value, or for any credit, or representative of value.

■ Idaho Code § 18–3801 is a penal statute. As such, it cannot be broadened or extended by construction to include and penalize acts or conduct not clearly within its terms.

"This court is limited to the declaration of the intent of the Legislature, and can neither legislate nor by construction of the statute 'enlarge the words to include other conduct of like, equal, or greater atrocity, simply because it may be within the same mischief to be remedied, when it is not fairly included in the language of the act.'" In re Dampier, 46 Idaho 195, at 207, 267 P. 452 at 455 (1928).

Knight v. Fox Caldwell Theatres Corporation, 70 Idaho 148, 212 P.2d 1027 (1950); State v. Robbins, 59 Idaho 279, 81 P.2d 1078 (1938); Holt v. Mickelson, 41 Idaho 694, 242 P. 977 (1925); State v. Choate, 41 Idaho 251, 238 P. 538 (1925); In re Moore, 38 Idaho 506, 224 P. 662 (1924); Independent School District No. 5 ex rel. Moore v. Collins, 15 Idaho 535, 98 P. 857, 128 Am.St.Rep. 76 (1908).

■ We do not find the machine here involved to be proscribed either by the terms or the intent of the statute.

Judgment reversed.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.