**STATE of Minnesota, Appellant,**

v.

**Signe Elissee PEARSON, Respondent.**

**No. C9-99-2021.**

Court of Appeals of Minnesota.

May 2, 2000.

Considered and decided by
PETERSON, Presiding Judge,
SCHUMACHER, Judge, and
ANDERSON, Judge.

## OPINION

PETERSON, Judge

Appellant State of Minnesota argues that the district court erred by staying adjudication of felony theft charges against respondent Signe Elissee Pearson. Respondent moves to strike a portion of appellant's brief and appendix. We reverse and remand, and grant respondent's motion to strike.

## FACTS

Pearson was charged by complaint with one count each of felony theft by wrongfully obtaining public assistance and felony theft by wrongfully obtaining food stamps in violation of Minn.Stat. §§ 256.98, subd. 1, 393.07, subd. 10(c)(1), 609.52, subd. 3(2)-(3) (1994). The complaint alleged the following facts: from May 1995 through February 1996, Pearson received $4,080 in aid to families with dependent children (AFDC) and $2,431 in food stamps from Washington County; Pearson was working 40 hours per week but stated in her application for assistance that she was earning no income; and if Pearson had disclosed her employment, she would not have received any AFDC or food stamps.

Pearson pleaded guilty to felony theft by wrongfully obtaining public assistance. She admitted the allegations in the complaint and also admitted that she knew she was supposed to disclose any employment or income to Washington County when applying for or receiving public assistance or food stamps. Pursuant to the parties' agreement, the district court referred the case to the Washington County circle sentencing process for a sentencing recommendation.

The sentencing circle met four or five times regarding Pearson's case. Partici-

Mike Hatch, Attorney General, St. Paul, and Doug Johnson, Washington County Attorney, Eric C. Thole, Assistant County Attorney, Stillwater, for appellant.

Michael F. Cromett, McMahon & Cromett Criminal Defense, PLLP, Roseville, for respondent.

pants included Pearson, her husband, the district court, and community members. The circle recommended a stay of adjudication of the charges against Pearson and that Pearson be required to pay restitution, obtain credit counseling and financial management help, perform community volunteer work, and participate in support/follow-up circles.

At the sentencing hearing, the county attorney stated that his office had not received notice of any of the circle meetings. He also stated that Washington County Community Services, the victim of the offense, had not received notice of the circle meetings, but a circle member stated, and the district court found, that community services had received notice of the meetings. Apparently, no one from community services was present at any of the circle meetings.

The district court accepted the circle's recommendation and stated the following reasons for staying adjudication: the parties and the court had referred the matter "to the circle with a belief in that process and that standing by itself is a mitigating circumstance"; Pearson had no felony record or pattern of law violations and was not a public safety risk; to avoid impeding Pearson from obtaining future employment; a traumatic event in Pearson's life affected her emotional and mental state at the time she committed the offense and was a contributing factor to the offense; and if Pearson had had the financial means to qualify for diversion, she would not have been charged with a felony.

## ISSUES

I. Did the district court err in staying adjudication of the charges against Pearson?

II. Should Pearson's motion to strike be granted?

## ANALYSIS

### I.

In *State v. Krotzer*, 548 N.W.2d 252, 254–55 (Minn.1996), the supreme court

concluded that a decision to stay adjudication of a criminal charge is within the "inherent judicial power" of the district court. The supreme court also concluded in *Krotzer* that the district court's determination that a stay of adjudication was warranted was well-supported by the special circumstances of the case. *Id.* at 254.

■ In *State v. Foss*, 556 N.W.2d 540, 540 (Minn.1996), the supreme court explained that, in *Krotzer*, it had held that

> if "special circumstances" are present, then a trial court may stay an adjudication of guilty over the prosecutor's objection without violating the separation-of-powers doctrine.

The *Foss* court further explained:

> It was not our intention that mere disagreement with the prosecutor's exercise of the charging discretion would constitute "special circumstances." Rather, it was our intention that the inherent judicial authority recognized in [*Krotzer*] be relied upon *sparingly* and only for the purpose of avoiding an injustice resulting from the prosecutor's *clear abuse of discretion* in the exercise of the charging function.

*Id.* at 541 (emphasis in original).

In *State v. Mitchell*, 577 N.W.2d 481, 493 (Minn.1998), the supreme court reiterated the statements it made in *Krotzer* and *Foss*:

> At times, this court has recognized exceptions when the [district court] does have inherent judicial power to act in the furtherance of justice, but this power is to be exercised only when there are special circumstances, such as selective or discriminatory prosecutorial intent. The inherent judicial power recognized in *Krotzer* is limited, and is to be relied upon *sparingly* and only for the purpose of avoiding an injustice resulting from the prosecutor's *clear abuse of discre-*

*tion* in the exercise of the charging function.

(Citation and quotation omitted) (emphasis in original).

In 1998, the legislature enacted Minn. Stat. § 611A.775 (1998), which authorizes restorative justice programs. Section 611A.775 states:

A community-based organization, in collaboration with a local governmental unit, may establish a restorative justice program. A restorative justice program is a program that provides forums where certain individuals charged with or petitioned for having committed an offense meet with the victim, if appropriate; the victim's family members or other supportive persons, if appropriate; the offender's family members or other supportive persons, if appropriate; a law enforcement official or prosecutor when appropriate; other criminal justice system professionals when appropriate; and members of the community, in order to:

(1) discuss the impact of the offense on the victim and the community;

(2) provide support to the victim and methods for reintegrating the victim into community life;

(3) assign an appropriate sanction to the offender; and

(4) provide methods for reintegrating the offender into community life.

■ There is no dispute that circle sentencing is a type of restorative justice program. Pearson argues that because restorative justice is an alternative to traditional sentencing under the criminal justice system and the state agreed to submit Pearson's case to circle sentencing, it should be bound to follow the circle's recommendation. We disagree. Although Minn.Stat. § 611A.775(3) authorizes a restorative justice program to "assign an appropriate sanction to the offender," the statutory language does not indicate a legislative intent to authorize restorative justice programs to assign a sanction that

would be an improper sentence if imposed by the district court. Nor does the statute indicate that the district court must impose the sanction assigned in the restorative justice program. Absent statutory language indicating a clear legislative intent to subordinate the sentencing authority of the district court to the decision of the forum provided in a restorative justice program, a construction of Minn.Stat. § 611A.775(3) that would have this effect is not reasonable. *See* Minn.Stat. § 645.17(1) (1998) (legislature does not intend result that is unreasonable).

Citing *People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405, 410 (1974), a case cited in *Krotzer,* Pearson argues that the prosecutor should not be allowed to override a sentencing circle's recommendation. But in that case, the California Supreme Court held that the decision to divert a defendant into a rehabilitation program could not constitutionally be subordinated to a prosecutor's veto. The court specifically noted that the decision to divert was a dispositional determination, not an extension of the charging process. Thus, unlike a stay of adjudication in Minnesota, under California law, a decision to divert an offender does not interfere with the prosecutor's charging authority.

■ Because the district court was not required to impose the sanction assigned in the restorative justice program, the district court could stay adjudication only if there were "special circumstances" warranting a stay of adjudication.

One reason the district court cited for staying adjudication was that if Pearson had had the financial means to qualify for diversion, she would not have been charged with a felony. Minn.Stat. § 401.065, subd. 2 (1998) (requiring counties to establish pretrial diversion programs for adult offenders). Neither Pearson nor the district court states the criteria for diverting welfare fraud offenders in Washington County, and we did not

find this information in the record. The record, therefore, does not establish that the prosecutor abused its discretion by not referring Pearson to a diversion program.

Another reason for the stay of adjudication was to avoid impeding Pearson's employment prospects. But case law indicates that possible loss of a job is not an appropriate factor for the court to consider when deciding whether to stay adjudication. *See State v. Twiss*, 570 N.W.2d 487, 487 (Minn.1997) (possible loss of a job due to criminal conviction is not a "special circumstance"; rather it is a typical consequence of a conviction for a serious offense); *State v. Thoma*, 569 N.W.2d 205, 209 (Minn.App.1997) (collateral consequences of conviction for underage drinking and driving, including loss of employment due to driver's license suspension, not "special circumstances"), *aff'd mem.*, 571 N.W.2d 773 (Minn.1997).

The remaining reasons cited by the district court do not constitute "special circumstances" warranting a stay of adjudication. The decision to refer Pearson to the sentencing circle was made as part of the sentencing process and, therefore, is not relevant to determining whether the prosecutor abused its discretion in charging Pearson. Pearson does not cite any authority indicating that an offender's criminal history or the fact than an offender is not a threat to public safety is relevant to determining whether a stay of adjudication is warranted. As the state argues, these factors are taken into account in offense severity levels and in criminal history scores under the sentencing guidelines. Finally, the district court cited a traumatic event that occurred in Pearson's life, but the record does not indicate what that traumatic event was. Consequently, we cannot determine how it may have affected the prosecutor's charging decision.

## II.

Pearson moves to strike from the brief and appendix to the state's brief an affidavit by the county attorney regarding its participation in other sentencing circles and all references to the affidavit. The papers filed in the district court, the exhibits, and the transcript of the proceeding, if any, shall constitute the record on appeal in all cases. Minn. R. Civ.App. P. 110.01. Because the affidavit was not sworn until after Pearson's sentencing, the motion to strike is granted.

## ·DECISION

Because the sentencing circle had no authority to assign a stay of adjudication as a sanction for felony theft and the district court was not required to impose the sanction assigned by the sentencing circle, the state's agreement to refer Pearson to the sentencing circle was not a proper basis for staying adjudication of the felony-theft charge. Because there were not other special circumstances that demonstrated a clear abuse of prosecutorial discretion in the exercise of the charging function, the district court improperly stayed adjudication of the felony-theft charge against Pearson.

**Reversed and remanded; motion granted.**